UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAUDI M. MWANGANGI, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | No. 1:19-cv-04105-JMS-MJD |
| | ) | |
| TAYLOR NIELSEN, BLAYNE ROOT, FRANK | ) | |
| NOLAND, BEN PHELPS, TREY HENDRIX, and | ) | |
| CITY OF LEBANON, INDIANA, | ) | |
| | ) | |
| *Defendants.* | ) | |

## ORDER

Plaintiff Daudi Mwangangi filed this civil rights action against the City of Lebanon, Indiana (the "City") and City Police Officers Taylor Nielsen, Frank Noland, and Trey Hendrix, and City Police Sergeant Ben Phelps (collectively, "the City Defendants"), as well as Whitestown, Indiana Police Officer Blayne Root, alleging multiple claims under 42 U.S.C. § 1983 and Indiana tort law. The claims stem from an incident in which Mr. Mwangangi, who works as a roadside assistance provider, responded to a call to assist a stranded motorist at a gas station in Lebanon, Indiana. Shortly after Mr. Mwangangi finished helping the motorist, seven police officers arrived and then detained, searched, handcuffed, arrested, and jailed him for impersonating a law enforcement officer, a charge that was ultimately dismissed. Mr. Mwangangi filed a Motion for Partial Summary Judgment, [Filing No. 74], the City Defendants filed a Cross-Motion for Summary Judgment, [Filing No. 86], and Officer Root filed a Cross-Motion for Summary Judgment, [Filing No. 82]. After the summary judgment motions were fully briefed, the Court granted each in part and denied each in part. [Filing No. 107.] Mr. Mwangangi then filed a Motion to Reconsider Portions of its Summary Judgment Ruling

1

("Motion to Reconsider"). [Filing No. 108.]  Officer Root filed a Notice of Appeal, [Filing No. 110], as did Officers Nielsen, Noland, and Hendrix and Sergeant Phelps (collectively, "the City Officers"), [Filing No. 112].  Mr. Mwangangi then filed a Motion to Certify Elements of the Court's Order Granting Defendants' Motion for Summary Judgment for Interlocutory Appeal ("Motion to Certify") pursuant to 28 U.S.C. § 1292(b), [Filing No. 119].  Thereafter, Officer Root filed his Partial Motion to Stay Proceedings ("Motion to Stay"), [Filing No. 120], which the City Defendants joined, [Filing No. 125].  The City Defendants then filed their own Motion to Stay District Court Proceedings Pending Appeal and to Vacate the June 7, 2021 Trial Setting ("Second Motion to Stay"), [Filing No. 131].  The Motion to Reconsider, Motion to Certify, Motion to Stay, and Second Motion to Stay are now ripe for the Court's decision.

## I.
### BACKGROUND

The parties' respective versions of the events underlying this lawsuit are lengthy and complex, have been addressed in the previous Order addressing the parties' summary judgment motions ("the Summary Judgment Order"), [Filing No. 107], and need not be fully recounted here.  Instead, the Court will discuss the factual background and procedural history of this case only to the extent necessary to resolve the pending motions.

Mr. Mwangangi's Amended Complaint, [Filing No. 38], asserts numerous claims against Defendants.  However, the Amended Complaint is not organized into numbered counts and does not specify the particular Defendant or Defendants against whom each claim is asserted.  [*See* Filing No. 38.]  Instead, the Amended Complaint outlines the relevant facts and then contains a section titled "Legal Claims" which reads in its entirety as follows:

> 185. Defendants' acts and omissions constitute unreasonable searches and seizures in violation of the Fourth Amendment of the U.S. Constitution.

186. The [City of] Lebanon's and/or Boone County's[1] policies, procedures, directives and protocols (both formal and informal), discussed herein violate the Fourth Amendment and have resulted in damage to Plaintiff and a whole class of similarly situated citizens. The aforementioned Constitutional violations and related injuries to Plaintiff and individual's (sic) similarly situated, will continue unless appropriate Court Orders are issued to stop the Defendants' unconstitutional policies and procedures.

187. The acts and omissions of the Defendants identified herein constitute false arrest, false imprisonment, battery and negligence under Indiana law.

188. Plaintiff has suffered damages as a result of the above civil torts and violations of the United States Constitution.

[Filing No. 38 at 30.]

As relevant here, Mr. Mwangangi alleged that "Defendants unreasonably seized and/or searched Mr. Mwangangi's blood and personal property." [Filing No. 38 at 10.] He alleged that, after he was arrested, "[t]he Defendant police officers searched [his] Vehicle, inventorying the items within." [Filing No. 38 at 24.] The Amended Complaint says nothing else about the search of the vehicle. However, Mr. Mwangangi alleges that his cell phone, computer tablet, and "other property" were unreasonably seized, retained for an unreasonably long time, and damaged as a result of Defendants' negligence. [Filing No. 38 at 26-27.]

Mr. Mwangangi subsequently filed a Motion for Leave to Amend Paragraph 185 of the Amended Complaint to Include Claims for Excessive Force and Failures to Intervene ("Motion to Amend"). [Filing No. 49.] In that motion, Mr. Mwangangi requested permission to amend Paragraph 185 to read: "Defendants' acts and omissions constitute unreasonable searches and seizures, excessive force and failures to intervene in violation of the U.S. Constitution." [Filing No. 49 at 6.] Magistrate Judge Dinsmore denied the Motion to Amend as unnecessary,

---

[1] Defendants Boone County, Indiana and Westley Garst were named in the Amended Complaint but later dismissed from this action with prejudice upon their and Mr. Mwangangi's joint motion. [Filing No. 98.]

concluding that complaints need not specifically set out legal theories, and no harm would result to Defendants if Mr. Mwangangi pursued excessive force and failure to intervene theories based on the facts already pled, because discovery was ongoing and neither the statements of claims and defenses nor dispositive motions were yet due. [Filing No. 55 at 1-2.]

Thereafter, as directed by the Case Management Plan, [Filing No. 26 at 6], Mr. Mwangangi submitted his Statement of Claims, [Filing No. 73], in advance of summary judgment. In relevant part, the Statement of Claims states as follows:

> b. This lawsuit seeks redress against the Defendant Officers for violation of Plaintiff's civil rights based upon their individual and collective actions/inactions representing Unreasonable Search and Seizure, Excessive Force and Failure to Intervene. Lt. Phelps also bears civil rights liability under a separate legal theory as a supervisor, for approving, assisting, condoning and/or purposely ignoring the violation of Plaintiff's civil rights.
>
> * * *
>
> d. This lawsuit seeks redress against the Defendant City of Lebanon, Indiana because of its policies, practices, protocols and customs (both formal and informal) relating to the use of Vehicle Inventories as a pretext to perform unconstitutional investigatory searches of vehicles without obtaining a warrant. Whether it is the actual policies, including but not limited to Standard Operating Guideline 31 (Exhibit 49 to Lt. Phelp[s]'s Deposition), or the manner in which those policies are customarily applied by the Lebanon Police, the policies and customs lend themselves to unconstitutional pretext searches, masquerading as a Vehicle Inventory. These unconstitutional Lebanon Police Department customs, specifically employed in this case, resulted in violations of Plaintiff's civil rights. Moreover, without redress sought in this case (whether by Court Order, Judgment, damages and/or punitive damages) civil rights violations, of the sort suffered by plaintiff, will continue to harm citizens living in the Lebanon Indiana area and those visiting that area. In this case, the Defendant Officers involved in the unreasonable search of Plaintiff's vehicle were Lt. Phelps, Officer Nielsen, Officer Root and Officer Hendrix. While Dep. Garst was present for the search and provided some passing assistance, his liability relative to the search does not stem from participating in the unconstitutional vehicle search, but through his failure to intervene.
>
> e. This lawsuit seeks redress for civil rights violations relating to the unreasonable search and seizure of plaintiff's personal property, including some damage to that property. The property at issue is Plaintiff's computer tablet, his cell phone and his Vehicle (which was damaged).

[Filing No. 73 at 5-7.]

Mr. Mwangangi subsequently filed his Motion for Partial Summary Judgment. [Filing No. 74.]  In the motion, Mr. Mwangangi listed the claims and issues upon which he sought summary judgment. [Filing No. 74 at 2-4.] At the end of that list, Mr. Mwangangi included the following:

> 4. Finally, it is noted that the outcome of the above Requests for Partial Summary Judgment, the evidence/arguments presented in support of this Motion and the evidence/arguments presented by parties opposing this Motion will likely also resolve other claims Plaintiff has raised in this case. Claims resolved or impacted by the Court's review of evidence and/or ruling on the above matters include:
>
> * * *
>
> e. Plaintiffs' claims against Lt. Phelps, Officer Nielsen, Officer Root, Officer Hendrix and Dep. Garst relative to the warrantless search of Plaintiff's Vehicle, which plaintiff maintains was identified as an Inventory as a pretext to justify a warrantless search. (The claim against Dep. Garst as to this unreasonable search issue relates to failure to intervene).

[Filing No. 74 at 4-5.]

In the "Statement of Material Facts Not in Dispute" in his opening brief, Mr. Mwangangi asserted: "After/as Officer Noland took Mr. Mr. Mwangangi away to jail, his Vehicle was searched by Officers Root, Nielsen, Hendrix and Phelps, without obtaining a warrant.  Deputy Garst did not intervene.  Defendants contend this search was an inventory of the Vehicle's contents." [Filing No. 77 at 18 (footnotes omitted).]

Officer Root filed a response to Mr. Mwangangi's Motion for Partial Summary Judgment, in which he asserted in his "Material Facts Not in Dispute" that "[a]fter Plaintiff was taken to [Officer] Noland's vehicle for transport to jail, [Officer] Root assisted the other officers on the scene in performing an inventory search of the Subject Vehicle." [Filing No. 79 at 5 (citations omitted).]  The response did not otherwise address the search of Mr. Mwangangi's vehicle. [See Filing No. 79.]  Officer Root also filed a separate Cross-Motion for Summary Judgment, in

which he sought judgment on all of the claims asserted against him. [Filing No. 82.] In his brief in support of the cross-motion, he included an identical assertion that "[a]fter Plaintiff was taken to [Officer] Noland's vehicle for transport to jail, [Officer] Root assisted the other officers on the scene in performing an inventory search of the Subject Vehicle." [Filing No. 83 at 5 (citations omitted).] The brief in support of the cross-motion did not otherwise address the vehicle search. [*See* Filing No. 83.]

The City Defendants filed their own Cross-Motion for Summary Judgment, seeking summary judgment on all claims against the City Defendants. [*See* Filing No. 86.] In their "Undisputed Material Facts," the City Defendants asserted that, after Mr. Mwangangi was arrested, "[a]n inventory of the vehicle took place," and then "[t]he vehicle was towed by the wrecker service." [Filing No. 87 at 9 (citations omitted).] The City Defendants argued in relevant part that Mr. Mwangangi had not come forward with evidence to sustain any claim under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), against the City regarding its alleged policy of performing unconstitutional vehicle searches under the guise of valid inventory searches and therefore summary judgment on that claim was warranted. [Filing No. 87 at 30-31.] The City's brief did not address any potential claims against individual officers relating to the vehicle search. [*See* Filing No. 87.]

In his consolidated response to Defendants' summary judgment motions and reply in support of his own motion, Mr. Mwangangi disputed Defendants' contention that an inventory search of the vehicle took place. [Filing No. 91 at 14.] He argued that the search was never intended to create an inventory of the vehicle's contents, vastly exceeded the scope of an inventory search, was used as a pretext to search for evidence without a warrant, and failed to comply with the City's guidelines for conducting an inventory search. [Filing No. 91 at 14.] He

6

asserted that "[t]he city inventory policy both as written and in how it was commonly executed by supervising officers in the field, made civil rights violations like the one suffered by Plaintiff highly predictable, if not inevitable." [Filing No. 91 at 14.] Mr. Mwangangi argued that there were questions of fact that precluded summary judgment on the *Monell* claim against the City concerning inventory searches. [Filing No. 91 at 31-33.] Mr. Mwangangi did not specifically address any potential claims against individual officers concerning the inventory search. [*See* Filing No. 91.]

In their reply brief, the City Defendants asserted that "Plaintiff is free to disagree, but the undisputed material facts demonstrate . . . that a vehicle inventory took place." [Filing No. 99 at 2.] Regarding the *Monell* claim, the City Defendants argued that Mr. Mwangangi did not identify any express policy, widespread practice or custom, or final policymaker who allegedly caused a constitutional deprivation, nor did he come forward with evidence of any express policy or any series of constitutional violations relating to inventory searches. [Filing No. 99 at 14.]

In his surreply, Mr. Mwangangi argues that he "has long identified Lebanon's written inventory policy," which as written and as applied "all but guaranteed such constitutional violations" because it provides almost no limit to the discretion of the officers in the field and "specifically allows activity the Indiana Supreme Court has identified as 'indicia of pretext which raise a question about whether it was conducted in good faith.'" [Filing No. 103 at 3 (quoting *Fair v. State*, 627 N.E.2d 427, 436 (Ind. 1993)).]

In the recitation of the facts in the Summary Judgment Order, the Court noted that, after Mr. Mwangangi was arrested, "[t]he remaining officers at the scene completed an inventory search of Mr. Mwangangi's Crown Victoria and had the vehicle towed." [Filing No. 107 at 19

(citations omitted).]   In the "Procedural History" section, the Court attempted to define the claims raised by Mr. Mwangangi, writing:

> The Amended Complaint is not a model of clarity, lacking numbered counts asserted against clearly identified defendants.  However, reading the Amended Complaint together with Mr. Mwangangi's Statement of Claims and Motion for Partial Summary Judgment, he appears to assert the following claims, which can be organized into three categories.  First, Mr. Mwangangi asserts numerous Fourth Amendment claims under 42 U.S.C. § 1983 against [Officers Nielsen, Noland, Hendrix, and Root and Sergeant Phelps, (collectively, "the Individual Defendants")], claiming that: (a) no reasonable suspicion existed to seize Mr. Mwangangi at the Lebanon Speedway at the time Officer Nielsen initiated her red-and-blue lights; (b) even if there were a reasonable suspicion, certain aspects of the seizure, including ordering Mr. Mwangangi out of his car, surrounding Mr. Mwangangi with numerous police vehicles, the pat downs, and the use of handcuffs rendered the seizure unreasonable; (c) no probable cause existed to arrest Mr. Mwangangi; (d) the officers used excessive force; and (e) certain officers failed to intervene to prevent Mr. Mwangangi's constitutional rights from being violated.  Second, Mr. Mwangangi asserts claims against the City under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978), relating to its policies concerning handcuffing and vehicle inventory searches. Third, Mr. Mwangangi asserts state-law tort claims of false arrest, false imprisonment, battery, negligence in relation to the handling of his personal property, and negligent training and supervision against the City Defendants.

[Filing No. 107 at 20-21 (internal citations omitted).]

The Court did not discern any individual claims against the Individual Defendants concerning the inventory search of the vehicle, and therefore did not address those claims in the Summary Judgment Order.  [*See generally* Filing No. 107.]  The Court granted summary judgment in favor of the City on Mr. Mwangangi's *Monell* claim relating to inventory searches, concluding that "Mr. Mwangangi has not specified how the City itself violated the Fourth Amendment with respect to its policy or practices regarding inventory searches," and noting that "[f]rom Mr. Mwangangi's meager briefing, the Court cannot discern exactly what practice, beyond a generalized 'inventory search,' is the subject of Mr. Mwangangi's complaint."  [Filing No. 107 at 72.]

Regarding Mr. Mwangangi's other claims, the Court granted summary judgment in favor of Mr. Mwangangi on the following issues: (1) Officer Root's liability for the first pat-down, which constituted an unreasonable search; (2) Officer Root's, Officer Noland's, and Officer Nielsen's liability for handcuffing Mr. Mwangangi, which was unreasonable and converted the initial stop into an arrest without probable cause; (3) Officer Noland's liability for the second pat-down without probable cause or reasonable suspicion; and (4) Officer Root's, Officer Noland's, Officer Nielsen's, and Sergeant Phelps' liability for arresting Mr. Mwangangi without probable cause. [Filing No. 107 at 79-80.] In granting summary judgment on each of these issues, the Court concluded that the Individual Defendants are not entitled to qualified immunity for patting down, handcuffing, or arresting Mr. Mwangangi. [Filing No. 107 at 61.]

In addition, as relevant here, the Court granted summary judgment in favor of the City Defendants on Mr. Mwangangi's claim for negligence in the handling of his personal property. [Filing No. 107 at 77-78.] Specifically, the Court concluded that the City Defendants were immune from liability on that claim under the law enforcement provision of the Indiana Tort Claims Act ("ITCA"), Ind. Code § 34-13-3-3(8)(A), and, in any event, Mr. Mwangangi had not identified any evidence supporting the claim. [Filing No. 107 at 77-78.] The Court also granted summary judgment in favor of the City Defendants as to the claim for negligent training and supervision, concluding that the claim was barred by the discretionary function immunity provision of the ITCA, Ind. Code § 34-13-3-3(7). [Filing No. 107 at 78-79.]

After the Summary Judgment Order was issued, Mr. Mwangangi filed his Motion to Reconsider pursuant to Federal Rule of Civil Procedure 59. [Filing No. 108.] Officer Root then filed a Notice of Appeal, appealing the Summary Judgment Order to the extent that it denied him qualified immunity and determined that probable cause did not exist to arrest Mr. Mwangangi.

9

[Filing No. 110.]  The City Officers filed their own Notice Appeal, also appealing the Summary Judgment Order to the extent that it denied them qualified immunity and concluded that there was no probable cause to arrest Mr. Mwangangi.  [Filing No. 112.][2]  Mr. Mwangangi then filed his Motion to Certify.  [Filing No. 119.]  Officer Root then filed his Motion to Stay, which the City Defendants joined, [Filing No. 125], requesting that "all proceedings in the District Court be stayed pending completion of the appeal with the exception of Plaintiff's [Motion to Certify]." [Filing No. 120.]  The Second Motion to Stay, filed by the City Defendants, asks the Court to rule on the Motion to Reconsider and Motion to Certify, then stay all pretrial and trial deadlines and vacate the final pretrial conference currently scheduled for May 13, 2021 and the trial currently scheduled for June 7, 2021. [Filing No. 131 at 8.]  The Motion to Reconsider, Motion to Certify, Motion to Stay, and Second Motion to Stay are now ripe for the Court's decision, and each will be addressed in turn.

## II.
### MOTION TO RECONSIDER

### A.  Standard of Review

Relief under Rule 59(e)[3] is an "extraordinary remed[y] reserved for the exceptional case." *Childress v. Walker*, 787 F.3d 433, 442 (7th Cir. 2015) (quoting *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008)).  "To prevail on a motion for reconsideration under Rule 59, the movant must present either newly discovered evidence or establish a manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation omitted).  "A 'manifest error'

---

[2] The Court of Appeals consolidated the two appeals for briefing and disposition.  [*See* Filing No. 2 in Seventh Circuit Case No. 21-1576.]

[3] Defendants assert that "it is unclear what Federal Rule of Civil Procedure the Plaintiff is moving under," [Filing No. 122 at 1], although Mr. Mwangangi explicitly states in the Motion to Reconsider that he is proceeding under Rule 59, [Filing No. 108 at 1].  Accordingly, the Court will apply the Rule 59 standards.

is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Id.* (citation omitted). A Rule 59(e) motion "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010) (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000)). Nor may a party use Rule 59(e) to "rehash previously rejected arguments." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (citing *Oto*, 224 F.3d at 606) (internal quotation omitted).

### B. Discussion

Mr. Mwangangi asserts that the Court made two errors in its Summary Judgment Order: (1) failing to recognize that the individual capacity § 1983 claims against Officers Nielsen, Root, and Hendrix and Sergeant Phelps (collectively, "the Defendant Officers") concerning their allegedly unlawful search of the vehicle remain to be resolved at trial; and (2) granting summary judgment in favor of the City on the *Monell* claim concerning the allegedly unlawful inventory search policy. [Filing No. 108 at 1-2.] The Court will address each of these issues in turn.

#### 1. Individual § 1983 Claims Against the Defendant Officers

Regarding the individual claims, Mr. Mwangangi contends that "[t]hroughout this litigation, and without regard to the validity of the arrest, [he] has rejected Defendants' contention that the vehicle search, conducted at the scene of the arrest, was a valid vehicle inventory or ever intended to be an inventory." [Filing No. 108 at 2.] He points out that the individual unlawful search claims were not addressed in the Summary Judgment Order because neither he nor any Defendants sought summary judgment on these claims, and accordingly he

11

"asks the Court to confirm [the] procedural reality" that "[t]hese claims remain part of this case." [Filing No. 108 at 4.] Specifically, Mr. Mwangangi asserts that these claims were preserved in his Statement of Claims, which states that the alleged inventory search was a "pretext to perform unconstitutional investigatory searches of vehicles without obtaining a warrant" and specifies that "the Defendant Officers involved in the unreasonable search of Plaintiff's vehicle were [Sergeant] Phelps, Officer Nielsen, Officer Root and Officer Hendrix." [Filing No. 108 at 4 (quoting Filing No. 73 at 6).] He also argues that the claims were referenced in his Motion for Partial Summary Judgment, in which he stated that the issues remaining for determination that might be impacted by the Court's ruling included the claims against the Defendant Officers "relative to the warrantless search of Plaintiff's Vehicle, which plaintiff maintains was identified as an Inventory as a pretext to justify a warrantless search." [Filing No. 108 at 4 (quoting Filing No. 74 at 5).] Mr. Mwangangi further argues that the Court's factual conclusion that Defendants conducted an inventory search of his vehicle is erroneous, disregards Defendants' burden of proof on that issue, does not interpret the facts in the light most favorable to the nonmoving party, ignores disputes of material fact, and accepts Defendants' conclusory assertions as controlling. [Filing No. 108 at 5-14.] He outlines specific evidence that he believes shows that a dispute of material fact exists as to whether the search of his vehicle was a permissible inventory search. [Filing No. 108 at 6-13.] Accordingly, Mr. Mwangangi argues, "as a matter of law, it is inappropriate, at this stage of the litigation, for the Court to hold/find that an inventory took place or that the search fell under the protection of an Inventory exception" to the warrant requirement. [Filing No. 108 at 14.] Mr. Mwangangi argues that the individual unlawful search claims were not rendered moot by the Summary Judgment Order because, even though he can recover search-related damages on his false arrest claim, a jury might value damages differently if he can also

demonstrate that the search was independently unlawful.  [Filing No. 108 at 3.]  Mr. Mwangangi also argues that the independent search claim may be relevant to the issue of punitive damages. [Filing No. 108 at 3-4.]

In response, Defendants[4] assert that motions for reconsideration may only be granted to correct manifest errors of law or fact, consider newly discovered evidence, or address intervening changes in controlling law, and none of these circumstances are present here.  [Filing No. 122 at 4-5; Filing No. 122 at 8.]  They argue that the Court correctly identified all of the claims at issue in this lawsuit by considering Mr. Mwangangi's Amended Complaint, Statement of Claims, and summary judgment briefing, and Mr. Mwangangi's "lack of clarity in assigning and labeling claims to individual defendants does not qualify as a basis to add those claims after cross motions for summary judgment have been ruled upon."  [Filing No. 122 at 5-6 (citing Filing No. 107 at 20-21).]  According to Defendants, Mr. Mwangangi's summary judgment response brief contains no arguments regarding the individual capacity vehicle search claims outside of the limited discussion of the *Monell* inventory claim.  [Filing No. 122 at 6.]  They assert that the Amended Complaint does not reference any improper vehicle search by the Defendant Officers, and his current characterization of the search as an improper inventory is belied by his allegation in the Amended Complaint, which states that "[t]he Defendant police officers searched the Vehicle, inventorying the items within."  [Filing No. 122 at 6-7 (quoting Filing No. 38 at 24).]  Defendants argue that "[t]o the extent that Plaintiff wishes to reexamine whether there was an inventory search or imply that this Court was incorrect by calling it an 'Inventory,' he is bound by his own judicial admission regarding [the] same."  [Filing No. 122 at 7.]  They contend that the individual claims were not included in the Statement of Claims or the

---

[4] The City Defendants responded to Mr. Mwangangi's motion, [Filing No. 122], and Officer Root joined the City Defendants' Response, [Filing No. 124].

summary judgment briefing, but "[e]ven assuming the Plaintiff addressed the Fourth Amendment individual capacity vehicle search claims in his response to summary judgment, it was too late in the day to bring them up" because a party cannot amend his complaint by raising arguments in his brief in opposition to a motion for summary judgment. [Filing No. 122 at 6-7.]

In reply, Mr. Mwangangi acknowledges that he has not identified a new fact or change in the law, but maintains that "the record, arguments, caselaw, summary judgment standards and procedural realities of the case, as previously/originally presented, contradict the vehicle search discussion in the [Summary Judgment] Order," and "justice and the application of law require [that] the Court correct that error." [Filing No. 123 at 2.] He asserts the individual search claims are not new and that Defendants' "argument misses the legal reality that, here, the individual Fourth Amendment violations of the Individual Defendants function as a *prerequisite* for the *Monell* Inventory Claims." [Filing No. 123 at 2-3 (emphasis in original).] Accordingly, he argues, it is "inconceivable" that there would be a *Monell* claim related to the vehicle search without separate individual claims against the officers who conducted the search. [Filing No. 123 at 3.] Mr. Mwangangi reiterates that he highlighted these individual claims in his Statement of Claims, his Motion for Partial Summary Judgment, and his summary judgment briefing. [Filing No. 123 at 3-4.] He argues that Defendants chose not to address those claims in their summary judgment briefing, did not include any facts related to the alleged inventory search, and failed to meet their burden to show that the search satisfied the inventory exception to the warrant requirement. [Filing No. 123 at 4-5.] Because questions of fact precluded the Court from deciding whether the search of the vehicle was a valid inventory search, Mr. Mwangangi argues, the Court should clarify that the individual search claims were not resolved by the Summary Judgment Order and remain to be addressed at trial. [Filing No. 123 at 5.] In a

footnote, Mr. Mwangangi asserts that his allegation in the Amended Complaint that Defendants searched his vehicle and inventoried the items inside is not binding because, "[a]s discovery began to reveal additional Fourth Amendment claims, Plaintiff, in an abundance of caution, initially tried to amend the Complaint to reflect additional Fourth Amendment violations clarified and uncovered during the discovery process," but the Court denied the Motion to Amend and in doing so "made it clear that such updated amendments to the Complaint to include newly revealed Fourth Amendment claims were not required or appropriate." [Filing No. 123 at 5 n.1 (citing Filing No. 55).] Mr. Mwangangi states that he "relied on the Court's direction and specifically identified the Vehicle Search claims revealed during discovery and discussed in depositions in both the Statement of Claims and the Motion for Partial Summary Judgment." [Filing No. 123 at 5 n.1 (citations omitted).]

Mr. Mwangangi essentially argues that the Court erred in failing to recognize his individual unlawful search claims against the Defendant Officers. This can only be true, however, if Mr. Mwangangi asserted those claims in his Amended Complaint and preserved them throughout the remainder of this litigation. Turning first to the Amended Complaint, the only reference Mr. Mwangangi made to a search of the vehicle is the factual allegation that "[t]he Defendant police officers searched the Vehicle, inventorying the items within." [Filing No. 38 at 24.] No other factual allegations were made regarding the search or inventory of the vehicle, such as that it was pretextual, that no actual inventory of the items found within the vehicle was created or documented, that the officers did not comply with the City's inventory policy, or whether the City even has a policy concerning inventory searches. Indeed, the single allegation implies that Defendants conducted a valid inventory search. It is true that the Amended Complaint frequently mentions unconstitutional searches or seizures, but these references do not

specifically relate to a search of a vehicle and could reasonably be interpreted as addressing any one of many events that Mr. Mwangangi alleges violated the Fourth Amendment, including the initial traffic stop, the pat-downs, the drawing of his blood, or the seizure of his personal property.

Mr. Mwangangi's reliance on Magistrate Judge Dinsmore's denial of the Motion to Amend misses the mark.  Mr. Mwangangi did not attempt to amend the Amended Complaint to include specific claims directed at the Defendant Officers concerning a search of the vehicle.  He attempted to add the words "excessive force and failures to intervene" to one paragraph of the Amended Complaint, which Magistrate Judge Dinsmore correctly determined was unnecessary given that the Amended Complaint already contained the factual allegations underlying Mr. Mwangangi's excessive force and failure to intervene theories.  [Filing No. 55 at 1-2.] Magistrate Judge Dinsmore referenced caselaw establishing that "[e]ven where a plaintiff initially asserts particular theories of recovery, unless the change unfairly harms the defendant [he] is allowed to switch course and pursue other avenues of relief as litigation progresses." [Filing No. 55 at 2 (quoting *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018)).]  It was true at that time—before liability discovery closed, statements of claims and defenses were filed, or dispositive motions were due—that the addition of the excessive force and failure to intervene theories was not harmful to Defendants.  [*See* Filing No. 55 at 2.]  But that is no longer true at this late stage in the litigation.

Looking past the lack of clarity provided in the Amended Complaint, Mr. Mwangangi's failure to include individual claims against the Defendant Officers in his Statement of Claims is fatal to those claims.  "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of

cases.'" *Jackson v. Regions Bank* ("*Jackson II*"), 838 F. App'x 195, 198 (7th Cir. 2021) (quoting

*Goodyear Tire & Rubber Co. v. Haeger*, ––– U.S. ––––, 137 S. Ct. 1178, 1186 (2017)). "District

courts often exercise this authority by ordering parties to submit a specific list of claims and

theories (superseding all prior assertions) to clarify the issues as trial approaches." *Jackson II*,

838 F. App'x at 198 (affirming district court's finding that a plaintiff had abandoned a claim by

failing to include it in the Statement of Claims).

It is true that Mr. Mwangangi stated in his Statement of Claims that "[i]n this case, the

Defendant Officers involved in the unreasonable search of Plaintiff's vehicle were [Sergeant]

Phelps, Officer Nielsen, Officer Root and Officer Hendrix." [Filing No. 73 at 6.]  But that

factual assertion does not sufficiently convey that Mr. Mwangangi intended to assert individual

claims against each of those officers, especially given the context in which that assertion was

made.  The first sentence of the paragraph states: "This lawsuit seeks redress *against the*

*Defendant City of Lebanon*, Indiana because of its policies, practices, protocols and customs

(both formal and informal) relating to the use of Vehicle Inventories as a pretext to perform

unconstitutional investigatory searches of vehicles without obtaining a warrant." [Filing No. 73

at 6 (emphasis added).]  As to other claims in the Statement of Claims, Mr. Mwangangi uses

similar language to make clear that he is in fact asserting claims against the Defendant Officers.

[*See* Filing No. 73 at 7 ("This lawsuit seeks redress against the Defendant Officers, the City of

Lebanon, Indiana, and Boone County Indiana, relating to state law claims . . . .").]  No such

language was used in reference to potential unlawful search claims against the Defendant

Officers.  Accordingly, while Mr. Mwangangi clearly asserted a claim against the City relating to

the vehicle search, and clearly asserted other claims against the Defendant Officers, he did not

clearly state claims against the Defendant Officers related to the search of his vehicle.  In other

words, his allegation that the Defendant Officers were involved in the search of his vehicle provides details as to the basis of the *Monell* claim against the City, but does not, when read in context, allege additional separate claims against each of the officers.

"This Court has consistently held that failure to assert a claim in a Statement of Claims results in abandonment of that claim." *Jackson v. Regions Bank* ("*Jackson I*"), 2020 WL 4430588, at *4 (S.D. Ind. July 31, 2020), *aff'd*, 838 F. App'x 195 (7th Cir. 2021) (collecting cases). This Court has also observed that:

> [T]he Statement of Claims requirement serve[s] several important purposes, including clarifying and focusing the issues for summary judgment and for trial, avoiding wasted time and resources on issues that will not be pursued, ensuring that the claims that are going forward can be addressed and disposed of in the most efficient manner possible, and aiding parties in developing their litigation strategies and preparing for trial. In order to carry out these purposes and give meaning to the Statement of Claims requirement, the Court must enforce it.

*Id*. (internal citations omitted).

Mr. Mwangangi did not assert individual claims related to the search of the vehicle against the Defendant Officers in his Statement of Claims. His argument that it is "inconceivable" that he would assert a *Monell* claim against the City concerning the vehicle search without asserting individual claims against the Defendant Officers relating to the search is neither helpful nor dispositive. It is true that establishing an underlying constitutional violation is generally required to prove a *Monell* claim. *See, e.g.*, *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee."). But it does not follow that every plaintiff asserting a *Monell* claim is automatically and simultaneously asserting claims against the individual municipal employees who participated in the alleged constitutional violation. Many plaintiffs may elect to do so, and it may make logical sense for them to do so, but neither

of those realities demonstrate that Mr. Mwangangi did in fact assert individual capacity claims, and neither of those realities justify the Court inferring individual claims where the Plaintiff did not specifically assert them. *See, e.g., Amgen Inc. v. Harris*, 577 U.S. 308, 311 (2016) (recognizing that plaintiffs are "masters of their complaint"); *Pilcher v. Swalec*, 540 F. Supp. 1373, 1374 (N.D. Ill. 1982) ("It is of course a plaintiff's sole decision as to how he will shape his lawsuit."). The Case Management Plan required "the party with the burden of proof [to] file a statement of the claims or defenses it intends to prove at trial, *stating specifically the legal theories upon which the claims or defenses are based*," [Filing No. 26 at 6 (emphasis added)], and Mr. Mwangangi failed to specifically state his individual claims against the Defendant Officers, regardless of his belief that those claims were implied by or related to the *Monell* claim against the City. *See Jackson I*, 2020 WL 4430588, at *4 ("The Court rejects the argument that a claim concerning [an alternative theory of liability] was 'inherently included' in the Statement of Claims [listing another specific legal theory based on the same statute], but even if the Court were to accept that premise, a claim that is 'inherently included' is not 'specifically' stated, and therefore does not meet the requirements established by the [Case Management Plan].").

The Court acknowledges that Mr. Mwangangi listed the individual search claims in the list of remaining claims contained in his Motion for Partial Summary Judgment, [Filing No. 74 at 5]. As a result, it would have been helpful if Defendants had addressed this issue in their summary judgment briefing, and it would have been in the interest of clarity for the Court to have addressed this issue in the Summary Judgment Order. It also would have been more accurate for the Court to specify in its recitation of the facts that Mr. Mwangangi disputes whether the search of the vehicle was a valid inventory search. [*See* Filing No. 77 at 18 (Mr. Mwangangi stating that "*Defendants contend* this search was an inventory of the Vehicle's

contents." (emphasis added)).]  These omissions, however, do not change the result.  Any potential claims against the Defendant Officers concerning the search of the vehicle—to the extent they ever existed—were abandoned when Mr. Mwangangi filed his Statement of Claims.  *See Jackson I*, 2020 WL 4430588, at *5 ("The contents of the Motion for Partial Summary Judgment are immaterial to the abandonment issue, because the claim was abandoned *before* the motion was filed, and the abandonment was not a consequence of the way the issues were framed or briefed in the motion.") (emphasis in original).  And, as discussed further below, the *Monell* claim against the City was correctly disposed of on grounds not related to the factual issue of whether a valid inventory search took place.

For all of these reasons, Mr. Mwangangi's Motion to Reconsider is **GRANTED IN PART** for the very limited purpose of clarifying that the factual issue of whether the vehicle search was a valid inventory search is disputed, and the Court has made no factual finding as to that issue.  However, the Court concludes that no claims against the Defendant Officers related to the search of the vehicle remain pending for resolution at trial, and to the extent Mr. Mwangangi seeks confirmation that those claims remain, his Motion to Reconsider is **DENIED**.

2.  Monell *Claim Relating to Inventory Searches*

Mr. Mwangangi argues that the Court's grant of summary judgment in favor of the City on the *Monell* claim relating to inventory searches "misses important evidence presented in the record as well as arguments presented in Plaintiff's summary judgment briefing." [Filing No. 108 at 14.]  He asserts that his briefing contained documented evidence that the City's inventory search policy, either as written or as applied, is constitutionally deficient and the Court erred in concluding that he had not properly developed his arguments as to this issue.  [Filing No. 108 at 14-18.]  Mr. Mwangangi also argues that the City's inventory policy allows activity that the

Indiana Supreme Court has identified as indicia of pretext. [Filing No. 108 at 15-18 (citing *Fair*, 627 N.E.2d at 436).]

In response, Defendants assert that Mr. Mwangangi's "request for the Court to reconsider the *Monell* inventory claim is nothing more than a re-hashing of the same losing argument he made at the summary judgment stage," which is not a ground for reconsideration. [Filing No. 122 at 9.] They assert that the Court was correct in concluding that Mr. Mwangangi waived this issue by failing to adequately develop his argument and come forward with evidence as necessary to meet his burden to survive summary judgment. [Filing No. 122 at 9-10.]

In reply, Mr. Mwangangi argues that the caselaw and evidence he presented in support of his *Monell* claims "was never actually considered by the Court," and the Court's conclusion that the issue had been waived is erroneous. [Filing No. 123 at 5-6.] He maintains that he presented sufficient evidence to demonstrate that factual disputes exist as to whether the City's inventory search policy, as written or as applied, is constitutionally deficient and leads to vehicle searches that violate the Fourth Amendment. [Filing No. 123 at 7.] He asks the Court to reverse its ruling on this issue. [Filing No. 123 at 7-8.]

Mr. Mwangangi has not identified any manifest error of fact or law in the Court's conclusion that he waived his *Monell* claim by failing to adequately develop his argument concerning what specifically is unconstitutional about the City's handling of inventory searches. Because the City Defendants sought summary judgment on this claim, Mr. Mwangangi was required to address this claim in his response and demonstrate that summary judgment was not appropriate. The section in his response brief concerning this issue is approximately two pages in length and addresses both the *Monell* claim related to inventory searches and his separate *Monell* claim related to the use of handcuffs. [Filing No. 91 at 31-33.] In that section, Mr.

Mwangangi makes several conclusory assertions, including that: (1) "the policies associated with Vehicle searches both as written and as practiced lead to violations of Plaintiff's civil rights in the form of an unreasonable search"; (2) "the record establishes actual or constructive notice that obvious omissions in [the City's] training and supervision program caused Defendants to violate Plaintiff's constitutional rights"; (3) "the written policies for vehicle searches and related training/supervision in vehicle searches (common in many interactions with the public) was so flawed or constitutionally problematic that it was almost guaranteed to result in civil rights abuses"; and (4) "[q]uestions of fact preclude Summary Judgment as to these issues." [Filing No. 91 at 31-32.] Mr. Mwangangi also cites to record evidence in support of these contentions, including the inventory policy and the deposition of Sergeant Phelps, but he does not explain what that evidence shows or the relevance of that evidence to his *Monell* claim. Notably, Mr. Mwangangi seems to implicitly acknowledge the inadequacy of his response brief in his Motion to Reconsider, where he generally cites to his surreply brief—not to his response brief—in support of his contentions that he previously presented arguments and evidence relevant to his *Monell* claim concerning vehicle searches. [*See* Filing No. 108 at 15-17 (citing Filing No. 103 and discussing the arguments contained therein).] Claims not properly developed in response to summary judgment are waived. *See Palmer v. Marion Cty.*, 327 F.3d 588, 597 (7th Cir. 2003) (concluding that "because [the plaintiff] failed to delineate his negligence claim in his district court brief in opposition to summary judgment or in his brief to this [Court of Appeals], his negligence claim is deemed abandoned").

Although Mr. Mwangangi disagrees with the Court's ruling, he has not identified a sufficient reason for the Court to reconsider. Accordingly, the Motion to Reconsider is **DENIED**

to the extent that it seeks reversal of the Court's grant of summary judgment in favor of the City on Mr. Mwangangi's *Monell* claim related to vehicle inventory searches.

### III.
### MOTION TO CERTIFY

#### A. Standard of Review

At the outset, the Court notes that Mr. Mwangangi seeks certification of certain issues under 28 U.S.C. § 1292(b), which allows a party to petition for leave to file an interlocutory appeal of a nonfinal order. [*See* Filing No. 119.]  However, the Court in its discretion concludes that the proper vehicle for assessing Mr. Mwangangi's request for permission to appeal these issues is Federal Rule of Civil Procedure 54(b).  *See Horwitz v. Alloy Auto. Co.*, 957 F.2d 1431, 1433 (7th Cir. 1992) (stating that "the district court has the discretion to decide whether to enter judgment on a portion of the case under Rule 54(b)" in appropriate circumstances).  In relevant part, Rule 54(b) provides:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b).

As a policy matter, Congress has determined that appeals should generally wait until litigation in the trial court has completely finished with respect to all parties and all claims. *See* 28 U.S.C. § 1291.  Rule 54(b) creates a narrow exception to that rule.  "Rule 54(b) is not intended to provide an option to the district court to certify issues for interlocutory appeal. Rather, Rule 54(b) allows appeal without delay of claims that are truly separate and distinct from those that remain pending in the district court, where 'separate' means having minimal factual

overlap." *Lottie v. W. Am. Ins. Co.*, 408 F.3d 935, 939 (7th Cir. 2005) (citations omitted). The Seventh Circuit has explained:

> The test for separate claims under the rule is whether the claim that is contended to be separate so overlaps the claim or claims that have been retained for trial that if the latter were to give rise to a separate appeal at the end of the case the court would have to go over the same ground that it had covered in the first appeal.

*Id.* (quoting *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1162 (7th Cir. 1997)). The power to enter a judgment pursuant to Rule 54(b) is "largely discretionary," and in exercising it the Court must consider "judicial administrative interests as well as the equities involved, and giv[e] due weight to the historic federal policy against piecemeal appeals." *Reifer v. Cooper*, 507 U.S. 258, 265 (1993) (internal quotations and citations omitted).

### B. Discussion

Mr. Mwangangi seeks to appeal the grant of summary judgment as to three claims: (1) his *Monell* claim against the City concerning inventory searches; (2) his state law negligent training and supervision claim against the City Defendants; and (3) his state law negligent handling of personal property claim against the City Defendants. [Filing No. 119 at 2.]

The City Defendants responded to Mr. Mwangangi's Motion to Certify, [Filing No. 127], and Officer Root joined the response, [Filing No. 128]. However, Defendants provide no meaningful substantive objection to Mr. Mwangangi's request to appeal,[5] and acknowledge that

---

[5] It appears that Defendants may have intended to oppose Mr. Mwangangi's request to appeal the grant of summary judgment as to the *Monell* claim, as they state in their response that they "renew, defer to, and adopt . . . their arguments asserted in their Response in Opposition to the Plaintiff's Motion for Reconsideration [DE 122] with respect to the Fourth Amendment individual search claims and *Monell* inventory search claim against the City of Lebanon, as these arguments apply with equal force to the arguments raised and referred to by Plaintiff in Section II of the Motion to Certify" and they "continue their request that the relief sought in the Plaintiff's Motion to Reconsider and Section II of the instant Motion to Certify be denied." [Filing No. 127 at 2.] However, Mr. Mwangangi does not request any relief in Section II of his Motion to Certify, and instead clarifies in that section that he does not seek to certify for appeal

they "take this position in the interests of judicial economy and efficiency in avoiding multiple appeals and with the intent of addressing these issues in a combined and unified matter." [Filing No. 127 at 2.]

In reply, Mr. Mwangangi states that "a substantive reply is not called for" because "Defendants have added nothing new to any arguments relevant to Plaintiff's Contingent Motion to Certify this Court's Inventory-*Monell* ruling" and do not object to certification of the rulings concerning state law immunity for the negligent training and supervision and negligent handling of property claims. [Filing No. 129 at 1.] Mr. Mwangangi "merely restates that he reserves all rights and arguments relevant to the unreasonable warrantless Vehicle Search claims pending against Defendants Phelps, Nielsen, Root and Hendrix." [Filing No. 129 at 1.]

This action involves multiple parties and multiple claims for relief. The three claims that Mr. Mwangangi seeks to pursue on appeal were fully disposed of in the Summary Judgment Order and summary judgment was granted in favor of the City or the City Defendants on each of the claims. These claims are sufficiently separate from the rest of the lawsuit to render appropriate a partial final judgment under Rule 54(b). The *Monell* claim was disposed of on the ground that it was waived, while the state law claims were disposed of based on the application of immunity under the ITCA. The claims and issues that remain pending for resolution at trial—

---

the individual search claims against the Defendant Officers, as he believes that the Court has not issued any final order as to those claims. [Filing No. 119 at 3.] Mr. Mwangangi's request to appeal the grant of summary judgment on the *Monell* claim is discussed in Section IV(A) of the Motion to Certify, [Filing No. 119 at 4-8], and Defendants do not specify whether they object to the relief requested in that section, [*see* Filing No. 127]. Regardless, Defendants' attempt to incorporate their previous arguments concerning the *Monell* claim is unhelpful, as those arguments related to the Motion to Reconsider and do not address whether an appeal is proper. Furthermore, Defendants "make no objections or arguments in response as to Plaintiff's request to certify" the grant of summary judgment on the negligent handling of personal property and negligent supervision and training claims. [Filing No. 127 at 2.] Defendants' arguments, taken together, amount to no meaningful objection to Mr. Mwangangi's requested relief or to an appeal of any of the issues addressed in the Motion to Certify.

a § 1983 failure-to-intervene/supervisory liability claim against the Individual Defendants; a *Monell* claim relating to the City's handcuffing practices; state law claims for false arrest, false imprisonment, and battery; as well as damages valuations for the claims on which Mr. Mwangangi was granted summary judgment—will not involve waiver or state law immunity principles. As such, any appeal that is potentially taken following a trial of the remaining claims would not involve the same issues that would be involved in a present appeal of the *Monell* inventory search claim and the state law claim for negligent training and supervision and negligent handling of property. *See Lottie*, 408 F.3d at 939.

In addition, the Court finds that there is no just reason for delay. The Court is mindful of the historic federal policy of avoiding piecemeal appeals. *See Reifer*, 507 U.S. at 265. However, the circumstances of this case are unique in that, regardless of how the Court decides the Rule 54(b) issue, there is already a potential for piecemeal appeals. Defendants are presently entitled to an appeal concerning the qualified immunity determinations and are pursuing that appeal. Whether Defendants are successful or not, the case will return to this Court for a trial addressing at least the remaining claims unaffected by the qualified immunity determinations. If Mr. Mwangangi were forced to wait until after that trial to appeal the Court's rulings concerning his waiver of the *Monell* inventory search claim and the ITCA immunity provisions applicable to his state law claims, it is possible that the Court of Appeals could then reverse this Court's rulings, which would require yet another trial to adjudicate his *Monell* and state law negligence claims. If, on the other hand, the Court enters final judgment on the *Monell* and state law negligence claims now, in the event that the Court of Appeals reverses this Court's rulings on those claims, those claims could be resolved in the same trial as the other remaining claims after the qualified immunity issue is decided on appeal, which would eliminate the need for a second trial.

Accordingly, the interests of judicial efficiency weigh heavily in favor of entering a partial final judgment under Rule 54(b).

For all of these reasons, the Court finds that its grant of summary judgment on Mr. Mwangangi's inventory search *Monell* claim, the state law claim for negligent training and supervision, and the state law claim for negligent handling of property constitute final judgments under Rule 54(b) and there is no just reason for delaying an appeal of those judgments. A partial final judgment shall issue accordingly. Mr. Mwangangi's Motion to Certify is **GRANTED** to the extent that he is permitted to take an appeal of these issues pursuant to Rule 54(b).

## IV.
### MOTION TO STAY AND SECOND MOTION TO STAY

In the Motion to Stay, Defendants[6] request "that all proceedings in the District Court be stayed pending completion of the appeal with the exception of Plaintiff's [Motion to Certify]." [Filing No. 120 at 3.] Defendants assert that the interest of judicial economy will be served by a stay that will permit them to litigate the qualified immunity issue on appeal. [Filing No. 120 at 2-3.]

Mr. Mwangangi does not object to staying this case pending resolution of Defendants' appeal, provided that the Motion to Reconsider and the Motion to Certify are resolved prior to the Court issuing any stay. [Filing No. 126 at 1.]

In the Second Motion to Stay, the City Defendants again ask the Court to stay this action pending resolution of the appeal and to vacate the currently scheduled final pretrial conference and trial. [Filing No. 131 at 8.]

---

[6] Officer Root filed his Motion to Stay, [Filing No. 120], which the City Defendants joined, [Filing No. 125].

In response to the Second Motion to Stay, Mr. Mwangangi agrees with the City Defendants' request to vacate the final pretrial and trial dates, but argues that "a blanket stay without . . . establishing a future plan may cause unneeded delay in the final resolution of [his] civil rights claims." [Filing No. 132 at 1.] He states that he "is uncertain if a stay is the appropriate procedural mechanism needed in these circumstances" and requests that the Court order the parties to prepare and submit a revised Case Management Plan, including new trial dates and related deadlines. [Filing No. 132 at 2.][7]

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Texas Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). However, a stay "requires a good justification." *Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995).

A stay of this matter is appropriate pending the resolution of the current appeal. It is in the interests of judicial administration and efficiency to allow the Court of Appeals to resolve the qualified immunity question and the other issues discussed above before moving forward in this litigation, and that constitutes "good justification" for staying this proceeding. The Court acknowledges Mr. Mwangangi's desire to reset the trial and reestablish the associated deadlines, but that is not practicable given that the Court cannot predict with any substantial degree of certainty when the current appeal will be completed or how the results of that appeal will impact

---

[7] Mr. Mwangangi also asserts, as he has repeatedly done elsewhere in his briefing, that "he has reserved all rights and arguments (including the right to file future Motions) relevant to the individual Vehicle Search claims pending against Defendants Phelps, Nielsen, Root and Hendrix." [Filing No. 132 at 1-2.] As this Order makes clear above, those claims, to the extent they were ever asserted, have been abandoned and are no longer at issue in this lawsuit. Mr. Mwangangi's repeated attempt to reserve his rights with respect to those claims do not operate to revive those claims and are therefore of no consequence.

the issues to be resolved in this Court.  Accordingly, the Motion to Stay and the Second Motion to Stay are **GRANTED**.  This action is hereby **STAYED**, and the Clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case, pending resolution of the appellate proceedings. All currently pending deadlines are **TERMINATED**, and all scheduled court proceedings are **VACATED**, including the final pretrial conference scheduled for May 13, 2021 and the jury trial scheduled to begin on June 7, 2021.  The trial and other deadlines will be reset at the earliest mutual convenience once the appeal has been resolved.  At least **once every 120 days** from the date of this Order, the parties are directed to file a joint report advising the Court of the status of the appeal.  Further, any party may file a motion to reopen this case and to lift the stay within **fourteen days** after the Seventh Circuit issues a decision.

## V.
### CONCLUSION

Based on the foregoing, the Court makes the following rulings:

1. Mr. Mwangangi's Motion to Reconsider Portions of its Summary Judgment Ruling, [108], is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. The motion is **GRANTED** for the very limited purpose of clarifying that the factual issue of whether the vehicle search was a valid inventory search is disputed;

   b. The Motion is **DENIED** to the extent that Mr. Mwangangi seeks confirmation that individual claims against the Defendant Officers concerning the inventory search of the vehicle remain pending, and the Court finds that any such claims, to the extent they were asserted in the first place, have been abandoned; and

   c. The Motion is **DENIED** to the extent that it seeks reversal of the Court's grant of summary judgment in favor of the City on Mr. Mwangangi's *Monell* claim related to vehicle inventory searches.

2. Mr. Mwangangi's Motion to Certify Elements of the Court's Order Granting Defendants' Motion for Summary Judgment for Interlocutory Appeal, [119], is **GRANTED** to the extent that the Court finds that its grant of summary judgment against Mr. Mwangangi on his inventory search *Monell* claim, his state law claim for

negligent training and supervision, and his state law claim for negligent handling of property constitute final judgments under Rule 54(b) and there is no just reason for delaying an appeal of those judgments. A partial final judgment shall issue accordingly.

3. Officer Root's Partial Motion to Stay Proceedings, [120], and the City Defendants' Motion to Stay District Court Proceedings Pending Appeal and to Vacate the June 7, 2021 Trial Setting, [131], are both **GRANTED**. This action is hereby **STAYED**, and the Clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case, pending resolution of the appellate proceedings. All currently pending deadlines are **TERMINATED**, and all scheduled court proceedings are **VACATED**, including the final pretrial conference scheduled for May 13, 2021 and the jury trial scheduled to begin on June 7, 2021. The trial and other deadlines will be reset at the earliest mutual convenience once the appeal has been resolved. At least **once every 120 days** from the date of this Order, the parties are to file a joint report advising the Court of the status of the appeal. Further, any party may file a motion to reopen this case and to lift the stay within **fourteen days** after the Seventh Circuit issues a decision.

Date: 5/3/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**